Please report. My name is Preston Easley. I represent the petitioner Michael Calabrese. This is a Longshore Act aggravation doctrine case. It's Hornbook Longshore law that any work situation that aggravates, accelerates, or combines with a pre-existing condition creates a compensable injury. Somehow I struck out with the Administrative Law Judge and I struck out with the Benefits Review Board which sort of rubber-stamped the ALJ in this thing. There's a big problem in the thinking of the ALJ and the Benefits Review Board. Somebody's got a problem thinking now. I don't know yet. I'm going to try to convince you that I'm the one that's thinking right and they're the ones that are thinking wrong. But it's a fundamental thing and that is that, you know, ever since that O'Leary case came in with the aggravation doctrine, this aggravation doctrine of Longshore, it's always been controversial. It's been nitpicked a million different ways. But this is what the ALJ and the BRB are missing. And I have argued this with people not just in this case. Pain is an injury. And I'm not going to go through a litany, but there have been various, you know, court-made pieces of court-made law that came up through the Longshore Act and people were resistant to them and they didn't accept them. And right now, this pain as an injury, it's got a lot of headwinds. You know, the adjusters don't go for it, employers don't go for it, ALJs don't go for it, and the Benefits Review Board doesn't go for it. And so, why should the Ninth Circuit go for it? Ninth Circuit's already done it. Keleda. And I don't... But Keleda was a case that addressed the last responsible employer doctrine. I didn't see any analysis in that case of what the court should consider to determine aggravation. So it's a different issue. The case uses the words aggravation, but it's talking about injury that occurs at a first or a second employer. So I don't think Keleda really helps your argument. I think it does because it had to define what was an injury. To get to a last responsible employer, you had to figure out was there an injury or wasn't there an injury. And in my brief, I said in analogizing Keleda's case to a two-injury situation, the ALJ reason that Keleda's disability resulted from continued use of his arm, each flare-up of pain represented a cumulative trauma and aggravated the underlying injury. And that's how they defined injury in Keleda. But we don't know in Keleda what the medical testimony was. So, as I recall, the petition in that case had a torn rotator cuff, and that his continued work at the two different employers was aggravating the injury and they were deciding which of the employers was responsible for his award benefit. So here you have Mr. Calabrese who has a condition that is, I believe it's undisputed, that the vascular necrosis was not caused in any way by his work. Nobody seems to dispute that. And we have medical testimony from Dr. Lau that no matter what Mr. Calabrese was doing, if he'd been getting up out of bed, sitting, moving, at some point the femoral head was going to break, collapse, and he was going to have pain. It just was happenstance that he may have been at work when it occurred because he continued working for a few months, and then it was six months later before he had the hip replacement. Your employment need not be the sole cause of the aggravation. Well, but you have a circumstance. So what if your employee broke his leg or his ankle, didn't realize it, was at work the next day, and started feeling pain? That's now a work-related injury under your analysis of aggravation? I knew I was going to get a lot of hypotheticals today, and I don't know if every hypothetical that could be thrown at me could fit the case at bar. Well, then don't we need to rely on medical testimony? Well, I'm not saying that either, but the medical testimony by Dr. Lau said that his continued work at BAE caused flare-ups of pain and it increased his symptoms. And I've cited this Bath Ironworks v. Preston and Bath Ironworks v. Fields, which are on point. Even one of them, they actually used the defense doctor's testimony to establish compensability, just like I'm doing. There was no testimony about whether the employee's osteoarthritis was related to his work in some fashion or was not. There was an absence of medical testimony in one of those cases. I can't remember if it was Fields or Preston. But they're both on point in this case, and like I say, the one of them. And now in both of them, was the employee or the employer arguing about Step 2 and what's necessary to rebut the presumption of causation? I mean, was that at issue? Because that seems to be the only issue here, is whether the employer rebutted the presumption of causation at Step 2. Right, and what happened was in the Preston case, it went up and came back down, you know, several appeals in it. And Dr. Culkin, that was the defense doctor, testified stress can worsen the involuntary movements associated with myoclonus, but only as a temporary aggravation, that any improvement of that temporary condition depends on the exact situation and his levels of concentration, medication, fatigue, motivation. So there you had medical testimony on causation. Now I recall that Preston was the individual with a hereditary neurological condition that caused him to shake. And the medical testimony was that the stress at work made it worse. So he was worse when he was at work and better when he wasn't at work, which seems different than what was happening here, where the medical testimony that the ALJ weighed and accepted, which I think the ALJ is entitled to do, was that there was nothing about being at work that caused this or made this worse. It was just happenstance that he was at work when he was feeling pain. He was going to feel pain anywhere that he was. It kind of goes to this question of inevitability, where there can be preexisting conditions where, as you know from practicing in this area, there's a causal relation then between what happens at your last job or one of these intervening jobs. But if the, in this case, pain would be inevitable, whether he was at a job or somewhere else, it's hard to actually pin the causation on the job. So I'd appreciate you said, well, in response to Judge Beatty, you don't know about that hypothetical, but one of the things we have to figure out is, well, where's the end point? Because if pain is inevitable, and in your view, that means there would always be causation, as I understand it, and I don't think that would be an acceptable rule. So I'd appreciate your comment on that. Well, in the Culetta case of the Ninth Circuit, defined repeated flare-ups of pain as an injury. But in that case, wasn't the pain? I know you're latching onto the words flare-up because Dr. Lau used those words as well, and I think you may be over-reading into that case and into Dr. Lau's testimony. In that case, I believe the testimony was that the flare-ups, the pain he was experiencing, were caused by work. Because of the work he was doing, it was causing a pain, and that was considered an aggravation. Whereas Dr. Lau was saying the pain that Mr. Calabrese suffered was inevitable. It was going to happen anywhere, which is different. He could have been at home when it happened. Yeah, lying in bed, getting up out of a chair. The activities of daily living is not an offense in Longshore, and I know people try to use it as an offense in Longshore. But we're not suggesting that. What we're talking about is the medical testimony as to whether this pain that occurred while he was at work was somehow an aggravation, which is what we need to get at as to how we define that. He testified that he never had pain in that hip before that one day at work that he was going up and down the stairs. And he's given testimony that he climbed hundreds and hundreds of steps getting in and out of the dry dock. So what we would assume occurred is what the doctors described, where the bone on the femoral head thins to the point it eventually collapses. And perhaps his testimony supports that the collapse happened while he was climbing those stairs. But does that mean that's the aggravation when it could have happened at any time? It was going to happen at some time and some place, and there was nothing about what he was doing at work that caused it because he lived in a boat and he climbed up and down steps all the time on his boat. He'd lived on his boat for over a year before this happened. I think the testimony was the boat had one or two steps. That's a lot different than climbing hundreds and hundreds of steps every day. So are you now arguing that climbing steps is what caused the ultimate manifestation of the avascular necrosis, that that caused the femoral head to collapse? And is there any medical testimony for that? I'll try to make this clear from the beginning. We're not claiming causation, and we're not claiming any change of pathology as a result of his work. I think we have your argument in mind, and you've expired your time. Okay. Thank you. You're welcome. Just so you know, I'm going to give you a minute for rebuttal because we did ask you a lot of questions, so you'll get some additional time. Good morning. My name is Frank B. Hugg. I'm here on behalf of BAE Systems Hawaii Shipyards. The opening statement of the Claimants Council was that the BRB and the ALJ were faking it. I think that's clearly in a posit where both the judge and the members of the board went through the process of what is required to be an admissible report and how the full import of the opinion of the doctors are resolved. The plaintiff has the burden of showing there is some harm. The plaintiff then has the burden of showing that there are conditions existing at work that could cause harm. That eliminates the presumption. I'm sorry. If the defense responds with a report that says it's noncompensable, then the presumption falls out of the case and the decision by the ALJ is on the record as a whole. That's a synopsis of legally how it happened. If you wanted to know about the medical, well, I like the testimony of Dr. Soma when I posed this question. Would you agree on the basis of reasonable medical probability that avascular necrosis is a disease in which the blood supply to the femoral head is either temporary or permanently interrupted, leading to cell death, femoral head collapse, and inevitable progressive destruction of the hip joint? Would you agree with that statement? Doctor? And your answer was yes, well put. Is that still your answer? No. Dr. Soma changed his testimony in two critical points. So the judge was confronted with weighing the evidence between two physicians who held two different opinions. He resolved that dispute in favor of BAE in reliance upon Dr. Lau. The disease itself is fascinating, as macabre as that may be in describing it, but many other known causes, but the one that took down this claimant was we underwent the treatment for the optic neuritis with steroids, heavy doses within the 14 months. So, counsel, what you're focusing on, I believe, is step three. Once the presumption falls out, it's step two. And the IJ and the BRB both found in your client's favor on that issue in weighing the medical evidence that the employee did not come forward with sufficient medical evidence to show causation. So I don't believe that the employee is disputing that. It wasn't in their brief, so if they are disputing that now, then I think that argument was likely waived. But what's really at issue before us is step two and what aggravation means. So the employee's counsel argued that, essentially, pain should always be considered aggravation. If he's experienced pain at work, that means that his underlying disease process was aggravated by work. And I think that's where you should focus your arguments, because that seems to be the only issue before us. I agree. I will try to agree and focus on that. The second step of how aggravation is determined is by one simple test, which doctor described it best. There was a conflict of the experts. Dr. Lau was relied upon by the employer and carrier. And the BRB also found that Dr. Lau's opinion was that there was no aggravation, and he repeated it time after time, no causation, no acceleration, and no abbreviation. He offered the reasons why involving the technical parts of the medical that I just read to the court. In my view, that should be enough to put the second step behind the judge and behind the board and behind this honorable court. Let me ask you a legal question. The board basically said that the ALJ went a bit astray on the aggravation rule. It said that it reflects an incorrect view of the aggravation rule. I saw that. And then talks about the Dr. Lau testimony, and then comes back to say, but nonetheless, Dr. Lau's testimony in its entirety establishes this non-work-related injury. As a court of appeals, are we limited to the board's ultimate finding here as the basis for review? Well, let's assume that the board didn't rely upon the absence of briefing of Step 1 and 2 before it did the balancing. I still think that the statements of Dr. Lau make it clear that there was no aggravation. Okay, that's not really my question. My question is the ALJ's basis for the opinion was rejected by the board. The board then says, so we now look at it, and we view aggravation differently. So my question is, does that mean that as the court of appeals, we are precluded from going back to the ALJ's finding on aggravation? I think that would be, in a sense, an issue that has been waived on appeal. One could argue that. But I'm assuming that even— I'm asking as a legal matter, not a question of waiver. It's a legal issue. Issue of this court reaching to the issue that was not decided below by either the judge or the BRB. Well, not decided by the BRB. It was decided by the ALJ. Yes, but the . . . Yes, what? I don't know that I have the legal answer. All right, thank you. I still come back to what the medicine says as reflected by the expert's opinion. If aggravation were defined with my favorite term on the preponderance of evidence here, there may be just a scintilla. That's my favorite word that applies in these proceedings. But if it's just a scintilla, that's enough for the judge to rely upon. Counsel, can I ask you to circle back around again to Judge McEwen's question? Because there is conflict between the IJ decision and the BRB decision and the analysis. They reach the same result, but they have a different analysis. But the Ninth Circuit in Ramey, that's a 1998 case, said that the ALJ's analysis in Step 2 is not a question of fact, but it is whether the employer presented evidence sufficient to establish that the claimant's injury was not work-related as a matter of law. That's the case. Step 2 is decided as a matter of law, and the BIA has a different view of Step 2 than the IJ or the ALJ. What does that mean for this court? Well, the question implies that it means that issue can still be raised as a matter of law. But the board, I believe, discussed the application of the second step was both fact and law. So the facts are clearly in support of BIA systems, and the law allows the judge and requires the board in this court to give deference to those findings that are supported by substantial evidence. Substantial evidence is the worst claims on earth to have for the employer and carrier because you always lose. This is one of those rare occasions where a physician who's even not submitted His report was not submitted to this court, but the physician is the facts determined who should be liable, and the law allows the judge and the board, the ALJ and the BRB, to make such determinations as a matter of law. But they did segregate those two components of the test. Well, your brief seems to rely on the reasoning of the ALJ rather than the board, which I think raises Judge McKeon's question as to what should we consider. I'm not sure I understand your answer, but please go on. Well, I think even if you could rely upon the board and should rely, I think that the ALJ, I think both methods are acceptable so long as the third step was resolved properly, namely which opinion prevails. Thank you. Thank you. Mr. Isley, you have a minute, everybody. I'd just like to narrow this down to about three cases. Bath Iron Works, First Circuit. A claim for long-term benefits can be based on a work-related activation or aggravation of the employee's symptoms, even if the disease itself is not work-related. Counsel, did you discover in your research Otero from the Fifth Circuit, and did you consider that case? What's the name of the case? It's Otero, I'm sorry, ORTCO. ORTCO Contractors v. Champentier, Fifth Circuit, 2003, and it's directly in point with respect to aggravation. I am not familiar with that case. I think the circuits have, frankly, wrestled with exactly the issue you're talking about. I'll be very brief and just say there were like two other cases that came to mind. And then Gardner v. Director, First Circuit, whether the circumstances of claimant's employment combined with his disease so as to induce attack of symptoms severe enough to incapacitate him or whether they actually alter the underlying disease process is not significant. In either event, his disability would result from the aggravation of his preexisting condition. Next case, Marinette Marine Corporation, Seventh Circuit. The Longstreet Act does not require that a later injury fundamentally alter a prior condition. It is enough that it produces or contributes to a worsening of symptoms. If those three cases are the law, I think I've hit the bases on all three of those cases. And we're not talking about a small aggravation. We're talking about two and a half months of climbing up and down 70-step dry docks, you know, 20 times a day on the ships. It's a lot more than the activities of day life, and it's a lot more than just being fortuitously at the shipyard, I think. And it was the same thing in the Preston case that I just read on the other three cases they said. And in Preston, they did what I'm doing here. They used the defense doctor's own testimony showing these temporary aggravations. But see, what happens is they're not really temporary aggravations because if you're always being temporarily aggravated, then eventually you have to quit. So they're not really temporary anymore. And that's a series of temporary aggravations can lead to a permanent loss of ability to work, and that's what happened to Mr. Calabrese. He continued working for two and a half months. You're pretty far over time now. You're, like, going on to two minutes over time. That's fine. Just finish up. That's all I am. All right. I'm here at the pleasure of the court. No, I know. That's why we're here. You can go long or short. It's fine. Yeah, well, we're here to hear the arguments, so we appreciate it. Thank you. The case just argued of Calabrese v. BAE is submitted. Thank you for the argument this morning.
judges: Farris, McKeown, Bade